IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL JACOBS, individually
and in his capacity as former
President of U.S. Glove, Inc.,

      Plaintiff,

      v.                                                                         Civ. No. 22-135 SCY/LF

JONATHON J. TAYLOR, ESQ., and
KOENIG, OELSNER, TAYLOR,
SCHOENFELD & GADDIS, P.C.

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR
DETERMINATION OF CHOICE OF LAW**

The motion before the Court requires it to consider only one thing: where the alleged tort at issue in this case occurred. Plaintiff asserts it occurred in New Mexico, and so New Mexico substantive law should apply in this case; Defendants assert it occurred in Colorado, and so Colorado substantive law should apply. Unable to reach an agreement, Defendants filed the present Motion for Determination of Choice of Law. Doc. 23; *see also* Doc. 36 (response); Doc. 37 (reply). Having reviewed the parties' submissions and the applicable law, the Court agrees with Plaintiff that New Mexico substantive law applies in this case.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

According to his operative complaint, Plaintiff Michael Jacobs asserts that he is the former President and sole owner of U.S. Glove Inc. Doc. 27 ¶ 1 (second amended complaint).

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 6, 8, 9.

Plaintiff is a New Mexico resident and U.S. Glove was a New Mexico corporation. *Id.* Defendant Jonathan Taylor is an attorney licensed to practice in Colorado. *Id.* ¶ 2. At the relevant times, he worked at Defendant Koenig, Oelsner, Taylor, Schoenfeld & Gaddis, P.C., which is a Colorado professional corporation with its principal place of business in Denver, Colorado. *Id.* ¶ 3. Plaintiff alleges that, in August 2018, he hired Defendant Taylor to provide legal representation in connection with the sale of U.S. Glove. *Id.* ¶¶ 6-10. "Negotiations resulted in an October 18, 2018, Stock Purchase Agreement and other related documents prepared by Defendants." *Id.* ¶ 10. Plaintiff then "sold the majority of his shares in [U.S. Glove] to investors. In return, U.S. Glove and/or the new owners of U.S. Glove became obligated to Mr. Jacobs on a Senior Promissory Note in the amount of $2,140,000.00." *Id.* ¶ 12. The Senior Promissory Note needed to be secured by a Uniform Commercial Code ("UCC") financing statement, but Plaintiff alleges that Defendants failed to timely perfect the UCC financing statement. *Id.* ¶¶ 13-14. Defendants did not perfect the financing statement until June 1, 2022 when Plaintiff asked about it. *Id.* ¶¶ 15-16. This delay, Plaintiff alleges, caused him to receive less money in a bankruptcy proceeding later filed by U.S. Glove (in the District of New Mexico) than he would have received if the financing statement had been timely filed. *Id.* ¶ 17.

  Plaintiff brings this lawsuit, alleging legal malpractice, breach of fiduciary duty, and negligent/intentional misrepresentation. Doc. 27. Plaintiff filed suit on January 13, 2022 in state court, Doc. 1-2, and Defendants removed the case to federal court on February 23, 2022, citing diversity jurisdiction, Doc. 1. The parties do not dispute that this Court has diversity jurisdiction over this matter. Doc. 10 at 2 (joint status report).

**LEGAL STANDARD**

A federal court exercising diversity jurisdiction applies federal procedural and state substantive law. *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Choice of law rules are substantive and therefore governed by the state in which the federal court sits. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1278 n.1 (10th Cir. 2021). In other words, when proceeding by diversity jurisdiction, federal courts apply the choice of law rules of the state in which they are sitting—in this case, New Mexico. *See Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217 (10th Cir. 1992). Under New Mexico law, "[t]he initial step in conflicts analysis is *characterization:* deciding the area of substantive law—e.g., torts, contracts, domestic relations—to which the law of the forum assigns a particular claim or issue." *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 11, 142 P.3d 374, 377. New Mexico generally treats malpractice cases as torts. *See Leyba v. Whitley*, 1995-NMSC-066, ¶ 12, 907 P.2d 172, 176 ("Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort.") (internal citation omitted).

Applying New Mexico's choice of law rules for torts, courts will generally follow "the doctrine of *lex loci delicti* and appl[y] the law of the state in which the wrongful conduct occurred." *Torres v. State*, 1995-NMSC-025, ¶ 13, 894 P.2d 386, 390. "The place of the wrong under this rule is the location of the last act necessary to complete the injury." *Id*. "Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred." *Mosley v. Titus*, 762 F. Supp. 2d 1298, 1314 (D.N.M. 2010) (citing *First Nat'l*

3

*Bank in Albuquerque v. Benson,* 1976-NMCA-072, 553 P.2d 1288, 1289). "This rule is not utilized, however, if such application would violate New Mexico public policy." *Torres*, 1995-NMSC-025, ¶ 13 (internal quotation marks and citation omitted). As the New Mexico Court of Appeals explained, "we begin with a strong presumption in favor of application of the place-of-the-wrong rule, but we will not close our eyes to compelling policy arguments for departure from the general rule in specific circumstances." *Est. of Gilmore*, 1997-NMCA-103, ¶ 21, 946 P.2d 1130, 1136.

## ANALYSIS

In this case, the parties do not dispute the characterization of Plaintiff's malpractice claim as a tort under New Mexico law and thus, they do not dispute the application of *lex loci delicti*. *See* Doc. 23 at 3; Doc. 36 at 2. As Defendants summarize in their brief, "the only dispute this Court need decide is where the alleged tort at issue in this case occurred." Doc. 37 at 1. Defendants allege that the wrongful conduct occurred in Colorado because Plaintiff hired a Colorado attorney with a Colorado law firm and those attorneys provided the legal services at issue in Colorado.² Doc. 23 at 3. Plaintiff, on the other hand, asserts that the wrongful conduct occurred in New Mexico because he is a New Mexico resident, the transaction at issue involved a New Mexico corporation, and the harm suffered occurred in New Mexico. Doc. 36 at 1.

To analyze this question, the Court starts by defining the wrongful conduct alleged by Plaintiff in this case. Plaintiff's malpractice claims are not related to Defendants' legal services as a whole, but are specifically related to Defendants' failure to timely perfect the UCC financing statement and their failure to inform Plaintiff about the unfiled UCC financing statement. Doc.

---

² To be clear, Defendants dispute any harm or malpractice occurred at all. *See* Doc. 23 at 1. For these purposes of this motion only, the Court assumes that tortious conduct and harm did occur so that it can determine where the alleged tort occurred.

4

27 ¶¶ 14-16 (operative complaint). That filing was supposed to, and eventually did, take place in New Mexico. *See* Doc. 27 ¶ 16 (operative complaint, alleging that "[o]n June 1, 2020, the UCC financing statement was perfected in New Mexico by Defendants"); Doc. 36 at 2 (Plaintiff's response brief, asserting that "[t]he filing of the UCC-1 was to take place in New Mexico"). Therefore, the wrongful conduct that Plaintiff's claims stem from (the failure to file), and the last act necessary to complete the injury (the untimely filing), occurred in New Mexico. Likewise, the harm alleged by Plaintiff is that, because of the untimely filing, he received less money in a New Mexico bankruptcy proceeding than he would have had the UCC financing statement been timely perfected. This harm also occurred in New Mexico as it stems from a New Mexico bankruptcy proceeding.

Defendants do not seem to dispute that that filing of the UCC financing statement was to take place in New Mexico. *See* Doc. 37 at 2 ("The state where the UCC statement was filed does not change the locale of legal representation."). Instead, Defendants argue that "[t]he promissory note at the heart of this case was drafted *in Colorado*," and "[w]hen Defendants filed the UCC-1 to perfect Plaintiff's interest as memorialized by that note, they did so from their office *in Colorado*." Doc. 37 at 2 (emphasis in original). Even so, the UCC filing was to take place in New Mexico, regardless of where Defendants were physically located when they drafted and made the filing.

Defendants also argue that even if the harm actually occurred in New Mexico (i.e., Plaintiff's loss of money in the bankruptcy proceeding related to the untimely filing), public policy favors applying Colorado law. To support this point, they cite *Youngers v. LaSalle Corr. Transp. LLC*, No. 1:20-CV-00465-WJ-JHR, 2022 WL 991251 (D.N.M. Apr. 1, 2022). *Youngers* involved a lawsuit over the death of an asylum seeker, Roxsana Hernandez. 2022 WL 991251, at

5

*1. The plaintiff alleges that, while being transported from California, Ms. Hernandez was detained at a facility in Arizona where her health conditions deteriorated. *Id.* at *3 n.3. "The bulk of the allegations against the [] Defendants center on conduct within the state of Arizona." *Id.* Ms. Hernandez eventually died in New Mexico, making New Mexico the location of the last act necessary to complete the injury. *Id.* at *3. But the court agreed with an earlier finding in the case by a different judge that the alleged wrongful actions that led to Ms. Hernandez's death took place primarily in Arizona and so "public policy considerations counseled against a rigid application of the *lex loci delicti* rule." *Id.* Relying on a New Mexico Court of Appeals case that provided guidance "when the location of death and wrongdoing diverge," the court applied Arizona substantive law as the place where the misconduct at issue occurred, as opposed to the place of the injury. *Id.* at *3-4 (citing *Est. of Gilmore*, 1997-NMCA-103, ¶ 19, 946 P.2d 1130, 1135).

Defendants attempt to analogize the analysis in *Youngers* to the present, explaining that even if the injury at issue occurred in New Mexico (the loss of money in the bankruptcy proceeding resulting from the untimely filing), the misconduct at issue (Defendants' legal services) occurred in Colorado where Defendants are located and the Court should therefore apply Colorado law. But here, both the wrongful conduct at issue *and* the injury occurred in New Mexico. As explained above, Plaintiff's malpractice claims center around the specific allegation that Defendants failed to file the UCC financing statement at the time of the transaction—a filing that was supposed to take place in New Mexico—and then untimely perfected that UCC financing statement—in New Mexico—a year and a half later. Doc. 27 ¶¶ 13-16 (operative complaint). This resulted in Plaintiff receiving less money in a New Mexico bankruptcy

proceeding. Thus, the Court need not examine whether the misconduct and the injury occurred in separate states; they both occurred in New Mexico.

Even if this case does have a relationship to Colorado because Defendants were located in Colorado when they drafted and completed the filing of the UCC financing statement, the New Mexico "Supreme Court has not adopted the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws §§ 6, 145 (1971)." *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 14, 142 P.3d 374, 378. Instead, "New Mexico courts have steadfastly applied the *lex loci delicti* rule in tort cases even when the connection between the lawsuit and New Mexico was largely fortuitous." *Id.* (collecting cases). And here, the Court sees no reason to depart from the *lex loci delicti* rule when the wrongful conduct and resulting harm occurred in New Mexico.

Lastly, Defendants argue that public policy and comity favor applying Colorado law because "Colorado certainly has the stronger interest in regulating the conduct of its lawyers and law firm, and in the application of it laws governing the legal standard of care." Doc. 23 at 4. The Court agrees that Colorado has a strong public policy interest in the laws governing attorneys it licenses. However, New Mexico also has a strong public policy interest in regulating the attorneys that practice in New Mexico, represent New Mexico clients, and conduct New Mexico UCC filings. Thus, public policy concerns do not compel the Court to depart from the application of the place-of-the-wrong rule. *See Est. of Gilmore*, 1997-NMCA-103, ¶ 21 ("[W]e begin with a strong presumption in favor of application of the place-of-the-wrong rule, but we will not close our eyes to compelling policy arguments for departure from the general rule in specific circumstances.").

8

**IT IS THEREFORE ORDERED** that Defendants' Motion for Determination of Choice of Law (Doc. 23) is DENIED. New Mexico substantive law applies to Plaintiff's claims.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE